**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **MICHAEL D. MCCAIN, SR.,** : | |
| : | Case No. 2:20-cv-3164 |
| **Plaintiff,** : | |
| : | Chief Judge Algenon L. Marbley |
| v. : | |
| : | Magistrate Judge Chelsey M. Vascura |
| **CAPT. KENNETH FARRAR, et al.,** : | |
| : | |
| **Defendants.** | |

**OPINION & ORDER**

**I. INTRODUCTION**

This matter is before the Court on Magistrate Judge Vascura's August 24, 2020 Report and Recommendation. (ECF. No. 7). Plaintiff Michael D. McCain, Sr., a *pro se* prisoner, brought this action against Defendants Captain Kenneth Farrar, Lieutenant Doughty, Officer Knisley, and Earlena Miller ("Defendants") under 42 U.S.C. § 1983. Mr. McCain alleges that Defendants retaliated against him after he filed grievances and initiated litigation against them. Magistrate Vascura recommended that Mr. McCain's Complaint be dismissed for failure to allege facts sufficient to support a claim of retaliation. Plaintiff timely filed his Objection to the Report and Recommendation, claiming his Complaint satisfied the general pleading requirements.

In his Objection, Plaintiff also asks to file an Amended Complaint under Fed. R. Civ. P. 15(a) and to provide a more definite statement in accordance with FRCP 12(e). The Court construes both of these requests as a motion for leave to file an amended complaint. Additionally, Plaintiff argues that Magistrate Judge Vascura should be disqualified from this case. For the following reasons, the Court **DENIES** Plaintiff's motion for leave to file an amended complaint,

1

**DENIES** Plaintiff's motion to disqualify, and **AFFIRMS** the Magistrate Judge's Report and Recommendation.

## II. BACKGROUND

Plaintiff is currently incarcerated at the Ross Correctional Institution ("RCI"), and he was previously incarcerated at Chillicothe Correctional Institution ("CCI"). While at CCI, Plaintiff initiated a civil lawsuit against Defendant Kenneth Farrar, who was then a sergeant at CCI (the "2015 Action").[1] The 2015 Action is still pending and involves allegations stemming from Plaintiff's complaints and grievances against prison officials on a range of issues, including officers' threats of violence and use of force against him.

After his transfer to RCI, Plaintiff was assigned to a food service position in August 2019. (ECF No. 1-1). Both Defendant Officer Knisley and an employee of Aramark Food Services, Mr. Nunnery, oversee the food services staff. Plaintiff describes that he was a skilled employee, enjoyed his work, and was able to earn approximately forty dollars per week. (*Id.* at 3, 11).

On January 29, 2020, Plaintiff asked Mr. Nunnery "to let Officer Knisley know that my job was complete and I could leave." (*Id.* at 12). Plaintiff claims he had previously been permitted to leave his position early once his duties were complete. (*Id.* at 7, 19). In response, Defendant Knisley threatened to fire Plaintiff from his food services job. (*Id.* at 3).

Later that day, Plaintiff filed an informal grievance against Defendant Knisley due to this exchange. (*Id.* at 3, 25). Plaintiff explained that "hanging around in the kitchen when I'm done with my boj [sic] is a securit [sic] issue that I do not want to be apart of" and he had never been informed that Defendant Knisley had made a rule that prisoners could not leave the dining hall prior to the end of their shifts. (*Id.* at 25). Plaintiff believed "it would be best to notify the

---

[1] *See* Case No. 2:15-cv-1262 (S.D. Ohio).

administration and to write the threat to find a reason to fire me up, and take it very serious." (*Id.* at 13). Captain Farrar responded to Plaintiff's informal complaint, reminding Plaintiff that Officer Knisley was in charge of dining room security and admonishing Plaintiff not try "to go through Aramark workers to bypass security" in the future.

The next day, on January 30, 2020, Defendant Knisley requested to talk with Plaintiff after releasing the other inmates from their food service positions early. (*Id.* at 4). Defendant Knisley then filed a report against Plaintiff for "admitting to sneaking out and blatantly disregarding the rule that was set forth months earlier" on multiple occasions. (*Id.* at 27). Subsequently, Plaintiff was called into Sergeant Smith's office to discuss Defendant Knisley's conduct report, and he was removed from his food service position for ninety days. (*Id.* at 5, 29). Plaintiff was re-assigned as a "Porter Unit 5" inmate employee. (*Id.* at 34).

On February 3, 2020, Plaintiff replied to Captain Farrar's response to his informal complaint. He objected to the substance of Captain Farrar's response and asserted that it was retaliatory due to his involvement in the 2015 Action. (*Id.* at 30). Plaintiff also asserted that Defendant Knisley's January 30, 2020 conduct report was false and made in retaliation of Plaintiff's January 29, 2020 informal grievance. On February 19, 2020, Inspector Todd Diehl investigated Plaintiff's first informal grievance. Inspector Diehl concluded Defendant Knisley's actions were not inappropriate and that Mr. Nunnery had not given Plaintiff permission to leave early. (*Id.* at 25).

Meanwhile, on January 31, 2020, Plaintiff filed another informal grievance against Defendant Knisley. He again asserted that the January 30, 2020 conduct report was false, made in retaliation of his first informal grievance, and caused him to lose his food services job. (*Id.* at 35). Captain Farrar again responded, stating that if Plaintiff did not follow Defendant Knisley's orders,

3

he had the right to remove Plaintiff from his position. Plaintiff replied to Captain Farrar, again disputing the underlying facts and challenging Captain Farrar's impartiality. Inspector Diehl also investigated this grievance. He stated that because Plaintiff's "concern ha[d] been previously addressed . . . [it] will not be responded to [again] in accordance with Administrative Rule 5120-9-31(E)." (*Id.*). Inspector Diehl also advised Plaintiff that his continued "improper use of the grievance procedure may result in restricted access" pursuant to the same administrative rule. (*Id.*). Plaintiff filed two additional informal complaints on February 3, 2020 and February 10, 2020.

On May 5 2020, Plaintiff was briefly re-hired to his food service position. (*Id.* at 9). Plaintiff worked less than two full shifts before Defendant Lt. Doughty allegedly removed Plaintiff from his position claiming, "Chowhall Lt. Doughty does not want this offender!" (*Id.* at 10). Plaintiff has been unable to return to his food service position and on May 12, 2020, Plaintiff was reclassed as a groundskeeper and then later as a librarian. (*Id.*).

On June 23, 2020 Plaintiff filed a Complaint against Defendants alleging three separate occurrences of retaliation for Plaintiff's use of the prison's grievance procedures and court proceedings against Defendants. Plaintiff did not identify the specific relief he seeks.

On August 24, 2020, Magistrate Judge Vascura issued her Report and Recommendation granting Plaintiff's motion to proceed *in forma pauperis* and recommending that Plaintiff's Complaint be dismissed for failure to state a claim. (ECF No. 7 at 1−2). The Magistrate Judge concluded that Defendant "Knisley's actions on January 30, 2020 amount to no more than run-of-the-mill supervision of an employee[,]" and therefore could not "conclude that Plaintiff's January 30, 2020 informal complaint was non-frivolous." (*Id.* at 10). The Report and Recommendation also emphasized that the Plaintiff failed to identify how his reassignment to the positions as a groundskeeper and a librarian were less favorable than his food service position. (*Id.*).

4

Furthermore, Magistrate Judge Vascura stressed that, due to the numerosity of Plaintiff's grievances and complaints, "any action by prison officers will fall in close temporal proximity with one or more of his complaints simply by chance." (*Id.* at 11).

Subsequently on September 8, 2020, Plaintiff timely filed his Objection to Magistrate Judge Vascura's Report and Recommendation. (ECF No. 8). In addition to objecting, he requests the Court grant him the opportunity to file an amended complaint under Fed. R. Civ. P. 15(a) to provide a more definite statement entitling him to relief. (*Id.*). Plaintiff alleges Magistrate Judge Vascura holds Plaintiff to a heightened pleading standard, contrary to the requirements in Fed. R. Civ. P. 8(a)(2), because of Magistrate Judge Vascura's alleged prejudice and personal bias against Plaintiff. Plaintiff cites Magistrate Judge Vascura's previous dismissal from Plaintiff's 2015 Action as the motive for her treatment of Plaintiff and moves to disqualify her from this proceeding. (*Id.* at 3).

### III. STANDARD OF REVIEW

When proceeding *in forma pauperis*, the Court is permitted to dismiss any portion of a complaint that fails to state a claim upon which relief may be granted or seeks monetary relief from an immune or improper defendant. 28 U.S.C. § 1915(e)(2). Fed. R. Civ. P. 8(a)(2) sets forth the requirements for stating a claim upon which relief can be granted. A complaint must set forth "a short and plaint statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While detailed, factual allegations are not necessary at this stage, mere labels and conclusions are insufficient to withstand a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive, the complaint must contain facts sufficient which, if accepted as true, would plausibly state a claim upon which relief may be granted. *Id.*

When a complaint is insufficient, a party may amend their complaint either twenty-one (21) days after serving it or, if it is a pleading which requires a response, twenty-one (21) days after service, whichever is earlier. Fed. R. Civ. P. 15(a). Otherwise, a party must either receive the opposing party's written consent or the Court's leave to amend, which should be freely given when justice so requires. *Id.* Generally, leave to amend may be denied when it would result in undue delay, prejudice to the opposing party, or when the motion is based on repeated failures to cure deficiencies in the complaint. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Duchon v. Cajon Co.*, 791 F.2d 43, 48 (6th Cir. 1986).

Additionally, under 28 U.S.C. § 455(a), "[a]ny justice, judge, or magistrate [magistrate judge] of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). A party to a proceeding may bring a timely motion under 28 U.S.C. § 144 with an affidavit alleging facts sufficient to establish that "the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party[.]" 28 U.S.C. § 144. An affidavit under § 144 must allege facts that would lead a reasonable person to believe a judge has a personal bias against the moving party. *Youn v. Track, Inc.*, 324 F.3d 409, 423 (6th Cir. 2003) (citing *Gen. Aviation, Inc. v. Cessna Aircraft, Co.*, 915 F.2d 1038, 1043 (6th Cir. 1990)).

Personal bias sufficient for recusal must "stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *Youn*, 324 F.3d at 423 (citing *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1965)). Extrajudicial conduct encompasses only a judge's personal biases, not judicial ones arising from a judge's background or view of the law. *Youn*, 324 F.3d at 423. Thus, an affidavit alleging personal bias must allege that such bias "emanates from some source other than participation in

6

the proceedings or prior contact with related cases." *Id.* Consequently, affidavits which are based exclusively on a magistrate's prior orders and oral statements are insufficient to warrant recusal. *Id.* Further, motions for recusal must be timely. 28 U.S.C. § 144. A party must file their affidavit supporting recusal no less than ten days before a proceeding is to be heard or at a later date with good cause for delay. *Id.*

## IV. LAW & ANALYSIS

### A. Retaliation Claim

To establish a First Amendment retaliation claim, a plaintiff must establish that he engaged in protected conduct, suffered an adverse action that would deter a person of ordinary firmness from engaging in the protected conduct, and that the adverse action was motivated by the protected conduct. *Henley v. Miller*, 2014 U.S. App. LEXIS 25159, at *4 (6th Cir. 2014) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)). Prisoners have a First Amendment right to file grievances against prison officials; thus, plaintiffs may establish retaliation claims based on their use of the prison's grievance procedures. *See Henley*, 2014 U.S. App. LEXIS 25159, at *4. Informal grievances may also qualify as protected First Amendment activity, so long as the grievances are not frivolous. *Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018).

Generally, prisoners have no right to prison employment or particular prison work. *Bradley v. Conarty*, 2018 U.S. App. LEXIS 26078, at *5-6 (6th Cir. 2018). However, under limited circumstances, the loss of prison employment may be deemed an adverse action sufficient to assert a retaliation claim. *Id.* In *Siggers-El*, the Sixth Circuit set forth an exception to the general rule that recognizes a claim for retaliation where the prisoner's transfer to another facility would result in foreseeable negative consequences to the particular prisoner. *Siggers-El v. Barlow*, 412 F.3d 693, 702 (6th Cir. 2005). There, the prisoner's transfer resulted in the foreseeable loss of his high-

7

paying job and it made it more difficult to visit with his attorney. *Id.; see also Shehee v. Luttrell*, 199 F.3d 295, 297, 300–01 (6th Cir. 1999) (recognizing that being fired from a coveted assignment with higher pay and favorable working conditions can constitute retaliatory conduct). When a fact finder, however, cannot reasonably "conclude that a retaliatory act would deter a person from exercising his rights, then the act should be characterized as *de minimis* and dismissed at the summary judgment stage." *Siggers-El*, 412 F.3d at 703.

Here, neither Plaintiff's Complaint nor his Objection to the Magistrate's Report and Recommendation sets forth a viable claim of First Amendment retaliation. Plaintiff's allegations stem from his reassignment from his food service position and the grievances he filed in relation to his job assignments. Plaintiff fails to allege, however, how his reassignment would deter a person of ordinary firmness from filing grievances. Although Plaintiff was warned that his repeated, frivolous use of the grievance procedures could result in restricted access, no such restrictions were ever put in place. Unlike *Siggers-El*, Plaintiff faced no foreseeable negative consequences in his reassignment. Plaintiff was able to continue working once he was reassigned as a groundskeeper and then later as a librarian. Similarly, unlike *Shehee*, the Plaintiff has not demonstrated that he was reassigned to a position with lower pay or less favorable working conditions. Here, the Plaintiff has not claimed he lost wages, but only that he was temporarily reassigned. Although the Plaintiff has expressed his personal interests in the food service position, his preferences do not fall within the narrow conditions required to meet the *Siggers-El* exception to the general rule that prisoners generally have no right to prison employment or particular prison work. Further, although the Plaintiff was temporarily suspended from work while being reassigned, his temporary unemployment does not rise to the level of the firings that occurred in *Siggers-El* or *Shehee*. Consequently, Plaintiff has failed to demonstrate how his reassignment

8

would prevent a person of ordinary firmness from utilizing the protected grievance procedures. Accordingly, Plaintiff's retaliation claim is not cognizable and is therefore **DISMISSED**.

### B. Leave to Amend

Under Federal Rule of Civil 15(a)(1), a party may amend a pleading once "as a matter of course" within 21 days of serving it or within 21 days of a responsive pleading. After that time has passed, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The Court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Sixth Circuit has explained that, in deciding whether to grant a motion to amend, courts should consider the futility of the amendment. *Brumbalough v. Camelot Care Centers, Inc.,* 427 F .3d 996, 1001 (6th Cir.2005). In other words, the Court need not grant the plaintiff leave to amend the complaint where the amendment would be futile. *Daniels v.* Ohio, No. 2:08-cv-16, 2008 WL 3843574 (S.D. Ohio Aug. 13, 2008) (citing *Yuhasz v. Brush Wellman, Inc.,* 341 F .3d 559, 569 (6th Cir.2003)).

Plaintiff's amendment request is problematic for two reasons. First, Plaintiff failed to attach a proposed amended complaint, and he did not include any facts in his Objection that, if included in an amended complaint, would cure the deficiencies outlined in the Magistrate's Report and Recommendation. Second, Plaintiff describes in closing that, if he is permitted to amend, he would organize "the bases of his claims . . . in chronological order to make clearer" his allegations and would submit an affidavit in support. Unfortunately, neither reorganization of the allegations in his Complaint nor setting forth those allegations in an attached affidavit would cure the deficiencies outlined in the Report and Recommendation. In short, Plaintiff's proposed amendments are futile. Accordingly, the Court **DENIES** his request for leave to file an amended complaint.

### C. Judicial Bias

Plaintiff's Objection also fails to set forth a claim of personal bias that would be sufficient to disqualify Magistrate Vascura. Plaintiff's Objection merely alleges that Magistrate Judge Vascura holds "prejudice and personal biest [sic] against the plaintiff" arising from the 2015 Action, from which Judge Vascura was transferred. (ECF No. 8 at 1; 2:15-cv-1262, ECF No. 100 at 1). Plaintiff claims that Judge Vascura has "attempted to have that matorious [sic] retaliation claim dismissed and did attempt to assist the Asst. Attn. Gen. Mrs. Kelly Brogan in preventing discovery in that still pending case[.]" (*Id*.). These allegations are insufficient because they are exclusively based on Plaintiff's prior contact with Magistrate Vascura in the 2015 Action and not from any extra judicial source. Moreover, nothing in the record of Plaintiff's prior matter indicates Magistrate Judge Vascura was transferred from the case due to extra judicial sources of bias or personal bias against the Plaintiff. Because Plaintiff's objections to Magistrate Judge Vascura's qualifications are based on her prior orders, he has not set forth a sufficient affidavit under § 144 to warrant disqualification. Consequently, Plaintiff's motion to disqualify Magistrate Judge Vascura is **DENIED**.

### IV. CONCLUSION

For the reasons articulated above, the Court hereby **DENIES** Plaintiff's Motion for Leave to Amend and **DENIES** Plaintiff's Motion to Disqualify Magistrate Judge Vascura. Additionally, the Court **AFFIRMS** the Magistrate Judge's Report and Recommendation. This matter is hereby

**DISMISSED** pursuant to §§ 1915(e)(2) and 1915A(b)(1) for failure to state a claim upon which relief may be granted.

    **IT IS SO ORDERED.**

                                                              **ALGENON L. MARBLEY**
                                                              **CHIEF UNITED STATES DISTRICT JUDGE**

**DATE: April 12, 2021**